Blair, J.
(Knox County).
The second item of the will of J ames Maholm reads as follows:
“Item 2. I devise and bequeath to my son, Thomas T. Maholm, and to the heirs of his body forever, the farm that he now resides upon, southwest and adjoining the village of Chatham, containing 195 acres more or less: for description of said farm see deed from Ashelman, now on record in the recorder’s office of Licking county, Ohio; the design of this item 2d is to confine the title of this farm to my son Thomas, and to his children and to their heirs down the same line forever.”
This will was duly admitted to probate and record in the Probate Court of Licking County, Ohio, and in 1870, and within the time allowed by law this son, Thomas T. Maholm, filed suit in the Court of Common Pleas of Licking County to contest such will, and as a result procured a verdict of a jury and judgment of the court setting the will aside.
Thereupon the brothers and sisters of Thomas gave Thomas quit-claim deeds to the farm described 'in item two of their father’s will; and Thomas in turn quit-claimed all his interest in other tracts to his brothers and sisters. By the terms of his will, the father had made provisions for the other children substantially as he had for Thomas, i. e., he had entailed certain lands to each of the other children and the heirs of their bodies, but in somewhat different language from that used in the entailment to Thomas and the heirs of his body.
As a result of the judgment setting aside the will, .and the quit-claim deeds, the children took and held the same parcels of land respectively as were devised to them by their father’s will, *441 the title thus obtained being more to the liking of these children than the one conferred upon them by the will of their father. In fact, the real object and purpose of the will contest and quitclaim deeds seems to have been to defeat the entailments.
That such was the object and purpose of these children is borne out by the fact that they had such an understanding and agreement among themselves before the will contest was heard, and no effort was made by any of them to sustain the will.
Thomas thereafter mortgaged this land to the Michigan Mutual Life Insurance Company, and later this company purchased the same at sheriff’s sale, in a suit brought to foreclose a mortgage which had been given by the testator, James Maholm, and in which suit this insurance company was a party defendant, and set up its mortgage given by Thomas. Title to these lands is now claimed by the defendants, Blime and Hunter, through deeds from this insurance company.
Thomas died in the year 1905, and the plaintiff here, who is a daughter of Thomas, now seeks partition of this land among the four children of Thomas who survive him, claiming title under their grandfather’s, will. The defendants, Blime and Hunter, claim that plaintiff and the other children of Thomas are barred from claiming title:
First. Because of the verdict of the jury and judgment of the court in setting aside the will of James Maholm.
Second. Because of the judgment of the common pleas and circuit courts of this county dismissing the petition in a suit brought by these children of Thomas, praying for the vacation of the judgment setting aside the will of their grandfather.
Third. Because of the judgment and sale in the suit of Patton against Maholm, this being a suit to foreclose a mortgage given by the testator, James Maholm, in his lifetime.
Fourth. Because of the statute of limitations.
I have considered these questions in the order in which they were presented. These four children of Thomas (plaintiff and her brothers ,and sister) were all in being and living with their father and mother at the time of the rendition of the judgment setting aside their grandfather’s will (being then minors of ten *442 der age), but none of them were parties to such proceeding. The one, James T. Maholm, was named as a defendant in the proceeding, ostensibly because of a small legacy left him by such will; but as the service of summons upon him was fatally defective (and as I recall no guardian ad litem, was appointed) we may safely conclude that none of these children were parties to such suit.
Under these circumstances we are led to inquire, “Is this judgment binding upon these children?” In my judgment, this question must be answered in the negative. Under the will of their grandfather, and by virtue of Section 8622 of the General Code (R. S., 4200), the remainder in fee simple would pass to such of the children of Thomas as should survive him. It is my judgment that these children of Thomas were necessary parties to the will contest proceeding, and not having been parties, they are not in any way affected by the judgment.
Section 12080 of the General Code specifies who must be made parties to a petition to contest the validity of a will. It says:
“All the devisee's, legatees, and heirs of the testator and other interested persons, including the executor or administrator, must be made parties to the action.”
It is claimed on behalf of the defendants, the Blimes and Hunters, that these children of Thomas were not “interested parties” such as is= contemplated in this section of the General Code; that inasmuch as they had no vested interest they would not come within the meaning of the statute; that in all proceedings involving an estate tail, the first tenant in tail represents his issue as well as himself, and that therefore the children or issue of Thomas were represented by Thomas in this proceeding.
There are some old .authorities which at first glance would seem in a measure to support such doctrine, but on closer examination we find such doctrine to have been recognized in eases where the interests of the first donee in tail and that of his issue were identical. In the case at bar it is very different.. The position which Thomas took in the will case was antagonistic to the interest of his children. His own issue were in fact the only p,ar *443 ties lie was fighting. Had. Thomas tried to uphold his father’s will and thereby sustain his own as well as his children’s title there would be some reason in claiming that he represented his children in such suit. He was trying to establish his own title as heir and thereby defeat his children or issue of their rights under the will.
I think the doctrine of representation by the first donee in tail against the policy of the law of Ohio. As reflecting upon this question, I cite Section 11925 and the following sections of the General Code which provide for the sale of entailed lands. Section 11926 provides as follows:
“All persons in being who are interested in the estate, or by the terms of the will, deed, or other instrument creating the entailment or other estate thereafter, or otherwise, shall be made parties to the action. ’ ’
These sections were in force substantially in their present form at the time this will was set aside, and show clearly that the Legislature of this state recognized the issue of the tenants in tail as being “interested persons” when it comes to a disposition of an entailed estate, and that in such ease the tenant in tail in no way represents his issue then in being.
Irrespective of any statute however, the idea of one person representing another whose interests are adverse to his is repugnant to every principle of our jurisprudence.
In the case of Reams v. Wolls, 61 O. S., 131, the court, in speaking of the statute giving to guardians the right to consent to a sale, on page 145 use the following language:
“But it does not follow from this that a guardian may assent for his ward in a proceeding commenced by himself and in his oiun interest and necessarily, as in this case, occupies a position adverse to his ward.”
Counsel for the defendants, the Blimes and Hunters, rely upon the case of Maholm v. Dryer, decided by the circuit court of this district in 1904, and later affirmed by the Supreme Court without report in the 72 O. S., 679, as authority sustaining their contention that these children are bound by the judgment set *444 ting aside the will of their grandfather. In this last cited case, the children of William C. Maholm, one of the testator’s sons, sought to recover lands which had been devised in another item of the will by language somewhat similar to the language used in item 2 above quoted. The said William having sold this laud in his lifetime and conveyed the same by warranty deed purporting to convey the fee simple thereof. The result of this case was a judgment against such recovery by the children of William. It is unfortunate that this case is not reported, neither the decision of the circuit nor of the Supreme Court — so we are left to surmise upon what theory this case was decided. However, the provision of the will then under consideration was quite different from item 2, the item being as follows:
“Item 3. I devise and bequeath to my son, William C. Maholm, and to the heirs of his body forever, a certain parcel of land (describing it). I design to vest the title of this parcel of land in my son, William C. Maholm, with the right in him to devise the same to either or all of his children and their children as he may desire.”
It is possible that the court construed this item as giving William a fee simple title.
Again, it is possible that the court held in that ease that the children of William were represented in the will contest by their father. Upon the face of the record of the will contest, this son, William, did not occupy a position adverse to his children, for he was defendant in such proceeding and might be presumed to be interested in sustaining his father’s will. In so far as the record shows, William, without his consent, was made a party defendant in such proceeding. His, as well as his children’s, title under such will was assailed.' At least it is not inconsistent with the record to assume that'William would be interested in sustaining his father’s will, and by so doing he would protect the rights of his children, while the position of Thomas was in every sense adverse to his children.
It is nest claimed that the plaintiff and her brothers and sister are barred from claiming in this suit by reason of the judgment in the case of Maholm et al v. O’Bannon et al. This last *445 mentioned case was ,a suit brought by the children of Thomas seeking to have the judgment vacating the will of their grandfather set aside, and was dismissed by the court as to all such children excepting as to James, and later the circuit court sustained a demurrer to the petition of James and dismissed such petition. I find nothing in the record of this ease which in my judgment would bar them from making the claim they now make.
If I am correct in holding that the children of Thomas were not bound by the judgment setting aside their grandfather’s will in the first instance, the refusal of the court to set such judgment aside would not give such judgment any more force or validity than it had in the first instance. If the judgment was void as to them, the refusal of the court to set it aside would not make it valid. The court did not hold the judgment setting aside the will to be a valid judgment; it only dismissed the petition. The sustaining of a demurrer to the petition and the dismissal of the same is not a final adjudication such as to bar the rights of these children. See Moore v. Dunn, 41 O. S., 62; Rafferty v. Traction Co., 1 C.C.(N.S.), 538.
As to the case of Patton v. Maholm, I find the results more disastrous to the claim of plaintiff. This suit was for the foreclosure of a mortgage given by the testator, James Maholm, in his lifetime, and a sale upon such judgment would convey all the title which the testator had at the time of executing such mortgage; and the defendants, the Blimes and Hunters, take good title from the purchaser at such sale.
However, in so far as the judgment in this same case upon the cross-petition of the Michigan Mutual Life Insurance Company affects the rights of the children of Thomas, the same is void. These children were never made parties to such cross-petition. The mortgage to this insurance company was given by Thomas and could not affect the rights of these children for the reason that Thomas had no interest extending beyond his lifetime. The amount realized from this sale should have been applied as follows:
First. To the payment of the Patton mortgage and the costs.
Second. To the payment of the insurance company’s mortgage to the extent of the interest which Thomas had in this land.
*446 Third. The balance should have been placed in trust or otherwise preserved for the children of Thomas who should survive him.
The application of such balance by the purchaser, the insurance company, to the payment of its mortgage given by Thomas was illegal and void, and the court was without jurisdiction to make such order.
Whether this insurance company may yet be held as trustee of such fund I do not pretend to decide as that matter is not raised in the pleadings and this insurance company is not a party to this suit. However, the fact remains that these children of Thomas have been deprived of valuable rights given them by the will of their grandfather, and this has been done under the guise of legal proceedings and without these children having had “their day in court.” For such illegal confiscation of their property there ought to be a remedy. Such fact, however, will not justify a disturbance of the title of the Blimes and Hunters. They take good title, and whatever rights these children had has been transferred to the funds arising from the sale of the land in the foreclosure suit of the Patton mortgage.
In view of this finding there remains no reason for considering the plea of the statute of limitations. However, the statute would not commence to run until the death of Thomas, which occurred in 1905, at which time the interest of these children became a vested one, and if they were not otherwise barred from claiming this land, they would not be barred by the lapse of time. An entry may be placed upon the journal of this court in accordance with this finding, adjudging the title to the lands in question to be in the defendants, Blimes and Hunters, as claimed in their answers respectively, and dismissing plaintiff’s petition; motion for new trial, if made, to be overruled and ex- • eeptions noted, ,and the statutory time allowed for preparing and filing bill of exceptions and -petition in error. If an appeal be taken, the appeal bond will be fixed at $200.